# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 06-05056-01-CR-SW-RED |
| LARRY CHAMBERLIN, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized and statements made as a result of a search of his residence should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on March 20, 2006. The defendant was present with counsel, Teresa Grantham, and the United States was represented by Richard Monroe, Assistant United States Attorney.

The government's first witness was Officer David Holmes of COMET. He was working as a undercover agent in August of 2006. On August 12, his wife was having a garage sale at their home in Republic. Officer Holmes was not working in an undercover capacity on that day. He saw a red Ford Ranger truck pull up to the garage sale, and defendant exited it. He approached Officer Holmes and asked if he had any guns to sell. Although Officer Holmes did not have any guns out, he did have two that he was willing to sell–a 12-gauge shotgun and a 9 mm handgun. After looking at the 9 mm handgun, defendant agreed to buy it for $200. The officer told defendant that he would have to come back with a permit to carry a pistol, at which time defendant became upset. He

1

increased the offer if the officer would sell the pistol without the paper. The officer explained that he had the gun in his name, and he didn't want to sell it without a permit for someone else to have it. Defendant stated that he had other guns at home that weren't registered. He suggested that if Officer Holmes would sell him the gun, if anyone came looking for it, defendant would say he lost it in the lake. Defendant became more and more agitated, and Officer Holmes asked him to leave. When he was driving off, the officer got his license plate number. Officer Holmes checked the registration of the vehicle, which checked to defendant and a female. He then ran a criminal history check on defendant, found out who defendant was, and found that he was a convicted felon. He then called Special Agent Angie Kaighin of ATF to tell her what happened. After the incident, Officer Holmes wrote a brief synopsis of the occurrence at the garage sale.

On cross examination, the officer stated that he had spoken to Agent Wiegner, who prepared the search warrant, about defendant. He thought he talked to him prior to the affidavit for the search warrant being prepared on August 25th, but he wasn't sure. He wrote his synopsis on August 17th. His synopsis was not a report in the usual format. He knew that Agent Kaighin did not prepare the affidavit for the search warrant. Officer Holmes agreed that the affidavit did not name him, and did not contain information that it was actually his garage sale and that he spoke to defendant.

Officer Holmes had never met defendant before, and he agreed that he did not know what his personality was like when he said that defendant became agitated. He stated that defendant basically walked around the garage sale quickly, and then went directly to him and asked about the guns. He was the only person to ask about guns at the sale. To the best of his recollection, other people were at the sale when defendant was there. He just happened to have guns he was willing to sell, but he did not have them for sale at his wife's yard sale. Officer Holmes testified that he

2

observed defendant using his cell phone during the time they were talking, and that he had a conversation with someone about the handgun.

Regarding the wording of the affidavit, Officer Holmes testified that he has applied for hundreds of search warrants. He has written affidavits like this where they are written in the third-person to protect the identity of the undercover officer. In this case, he believed that the author/affiant did not want to disclose that it was his house, his family, and his identity. No one else was involved in the conversation with defendant, and other than his wife, he did not know anyone else that would have overheard the conversation. In addition to running defendant's criminal history, he positively identified defendant through the Department of Revenue photograph, drove by his residence, and identified the vehicle in the driveway as being the one he had seen at the garage sale. He did not write all this down, but did provide the information verbally to the ATF. He thinks this occurred after he provided the synopsis. Officer Holmes acknowledged that he did not run any kind of check to see if defendant's right to possess firearms had been restored. The court would have to be contacted directly, which he did not do. There is not a database where that can be checked. He was not asked to review the affidavit that Agent Wiegner prepared before it was presented to the issuing judge. The search warrant in this case was executed on August 30, 2006, and he had other participation in this case after that.

On redirect, Officer Holmes stated that he viewed himself as more of a victim, rather than the investigating officer. He passed the information on to what he thought was the right agency, ATF. Regardless of the fact that he had the make of the vehicle wrong, he did pass along the license plate number to ATF.

The second witness for the government was Christopher Wiegner, Special Agent with ATF.

He applied for the search warrant in this case, and assisted in executing it. At the time it was initially executed, no one was home. In the course of the search, he found a business card inside the residence. He called the telephone number on the card, and defendant answered the phone. He told him that they'd received information that he was a convicted felon in possession of several firearms. Agent Wiegner asked defendant if he could come back to his residence, so he could secure it after the warrant was executed. The only thing that defendant said to him during the initial telephone call was that the firearms in the residence belonged to his girlfriend. The officer than received a phone call on the phone he had been using, which he answered. Defendant was on the phone, and said that he could break free from work and head back to his house. Originally, he'd said he couldn't be there for a few hours. At that point, they also talked about a gun safe the officers had located in the house. The officer asked for a key or combination, rather than having to use a locksmith. Defendant said he had the combination in his billfold, which he gave to Agent Wiegner, along with instructions on how to open the safe. The officers did open the gun safe. Defendant arrived at this residence while the officers were still executing the search warrant. The officer placed him under arrest and advised him of his Miranda rights. Defendant spoke to the officer more after he waived his rights. He was not in custody when they talked on the phone. All the officer knew at that time was that defendant was somewhere in Springfield. He was free to return or not at the time he called the officer back and provided the combination to the safe. When he was physically in their presence, his Miranda rights were read to him, he waived those rights, and he then spoke to Agent Wiegner and several agents. When Agent Wiegner wrote the affidavit, he was concerned about the Officer Holmes' family's safety. Agent Wiegner acknowledged that the license plate number he was given was actually a red Chevy truck, rather than a Ford, which was registered to defendant and his wife.

On cross examination, the witness testified that he did ask defendant if he would return to the residence to talk with him and to secure the residence, as well as asking him to give them the combination to the safe. He also told him that he was suspected of being a felon in possession of firearms. He thought defendant said at that point that the guns belonged to his girlfriend. He also thought that he asked defendant about possessing ammunition, at which point defendant became silent. He did not advise him of his rights during either phone conversation. There was another agent present when he had the conversation with defendant, Special Agent Aug, but she could only hear his side of the conversation. He made notes as he spoke with defendant.

On redirect, the officer testified that one of the things he wrote down was the combination to the safe. There were firearms and controlled substances in the safe when they opened it.

It is defendant's contention that the search and seizure were unlawful and that evidence obtained and statements made should be suppressed. He asserts that the affidavit used to obtain the search warrant failed to establish probable cause because it did not contain sufficient and corroborated information. He contends that the affidavit describes information received from an undercover officer, not the affiant, and that the affidavit fails to disclose when the information was disclosed to the affiant. It is also asserted that the affidavit fails to describe the location where the undercover officer purportedly observed defendant. Defendant asserts that the affidavit contains multiple hearsay from an unidentified person, who is not law enforcement and not stated to be reliable; that the information regarding a potential crime was not corroborated prior to applying for the search warrant; and that the affidavit contained false statements regarding the details of the conversation that allegedly took place between defendant and an unidentified person, which was overheard by the undercover officer. It is further contended that all statements made by defendant prior to being advised of his rights should be excluded as obtained in violation of the Constitution.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999).

Pursuant to Franks v. Delaware, 438 U.S. 154 (1978), in a challenge to a search warrant application, defendants must establish "that a false statement was included in the affidavit knowingly and intentionally or with reckless disregard for its truth, and that the affidavit's remaining content is insufficient to establish probable cause." United States v. Roberson, 439 F.3d 934, 939 (8th Cir. 2006). Even if the contested statements are false and misleading, the search warrant may still stand if the statements in question are removed and the remaining statements in the application would support a finding of probable cause to support the search warrant. Id. at 939.

A full review of the evidence in this case convinces the Court that defendant has failed to establish that the affidavit lacked sufficient and corroborated information to establish probable cause for issuance of the search warrant. In his affidavit, Agent Wiegner indicates that he received information from a police officer acting in an undercover capacity, regarding an alleged violation of federal firearms law. The affidavit contains the first-hand information from Officer Holmes, which he conveyed to ATF. The incident occurred on August 12th, he wrote his synopsis on the 17th, and the search warrant was applied for on the 25th. Whether in reliance on the synopsis or based on verbal communication, ATF learned of the incident in a timely fashion, and the Court does not believe that staleness is an issue in this case. Based on the testimony adduced at the hearing, the Court finds that Officer Holmes' statements were reliable and credible. They were based on a conversation he had, one-on-one, with defendant. Defendant sought to buy guns from Officer Holmes, negotiated a deal, but objected to obtaining a pistol permit. In the course of trying to convince the officer to illegally sell him the pistol, he stated that he had other guns at his home. The officer had to ask defendant to leave the premises because he felt he was becoming agitated. After the incident, Officer Holmes wrote a synopsis of the events. This information was conveyed to Agent Wiegner at some point between August 12th, the day of the garage sale, and August 25th, the day the search warrant was sought. In addition to the information regarding the events at the garage sale, the officer investigated the matter after defendant left the scene, and through normal record-checking procedure, was able to establish defendant's identity. He discovered, moreover, that he was a convicted felon with multiple convictions. Through further investigation, the officer confirmed defendant's address and identified the vehicle parked in the driveway as the vehicle he had seen defendant in at the garage sale. Beyond that, according to the affidavit, Agent Kaighin confirmed defendant's

address with the United States Postal Inspector.  Agent Wiegner confirmed the address with the Department of Revenue and the Stone County, Missouri, 911 Service.  He also indicated that he had personally observed the residence and described it in detail.   Therefore, it is clear that there was sufficient corroboration of a potential crime prior to the application for the search warrant.  That the affidavit was written in a manner that suggested that a third person was present does not change the facts of the case, nor does it create unreliable multiple hearsay.  It is clear that the writing style was intended to protect Officer Holmes' identity as an undercover officer.  Based on a full review of the record, it cannot be said that Agent Wiegner made any deliberately false or misleading statements in this case by adopting a writing style that would shelter the identity of a law enforcement officer and his family.

Even assuming,  however, that the warrant in this case was not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in <u>United States v. Leon</u>, 468 U.S. 897, 922-23 (1984),  would apply.  It is clear that Agent Wiegner  relied in good faith on what he believed to be a valid search warrant, which was reviewed and signed by a neutral magistrate.  There is nothing to suggest that the affidavit was so lacking in indicia of probable cause that the <u>Leon</u> good faith exception should not apply.   When making a good faith assessment, the Court must examine the totality of the circumstances, including what the officer knew but did not include in his affidavit.  <u>United States v. Chambers,</u> 987 F.2d 1331, 1335 (8th Cir. 1993).   Having reviewed the record as a whole, with the benefit of the officers' testimony at the hearing,  it is clear that Agent Wiegner reasonably relied on the validity of the warrant.  It was objectively reasonable for the officer to have believed that probable cause existed in this case.  Accordingly, it will be recommended that the motion to suppress should be denied.

8

Case 3:06-cr-05056-MDH   Document 24   Filed 04/05/07   Page 8 of 10

Additionally, there is no basis to suppress the statements made by defendant. It is apparent from the testimony adduced at the hearing that he was not in custody at the time the statements regarding the combination to the gun safe or who possessed the guns were made. Having found defendant's business card in his residence, Agent Wiegner called the number, advised defendant about what was occurring regarding the investigation of him as a convicted felon and the search warrant, and asked him if he would be able to come back to his residence to secure it after the officers were finished executing the search warrant. Defendant volunteered that the firearms belonged to his girlfriend. He was in Springfield at the time, and the officers were at his residence in Stone County. There is no evidence of coercion or duress in this case regarding statements made by defendant when he was clearly not in custody. This conclusion is supported by the fact that, not only did he voluntarily provide the combination to the safe and how to open it during the course of a telephone conversation from his own cell phone at a location a distance from the officer, he provided this information during a second call with Agent Wiegner, which he initiated. The fact that Agent Wiegner asked him, during that second conversation, for the combination for a gun safe that had been found during the course of execution of the warrant, in lieu of having to use a locksmith, does not rise to the level of coercion. There is no evidence before the Court to suggest that defendant was coerced into making any statements or that he did not make them voluntarily. Therefore, it will be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

/s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: 04/05/07